UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Think Rubix, LLC, | No. 2:21-cv-00559-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Be Woke. Vote, et al., | |
| Defendants. | |

Think Rubix brings this trademark suit against the owners and operators of the Be Woke. Vote[1] initiative. The defendants move for judgment on the pleadings. The court heard oral arguments on the motion. The motion is **granted**.

I.  **BACKGROUND**

Think Rubix "is a social innovation consultancy firm." Compl. ¶ 18, ECF No. 1. Think Rubix uses its WOKE VOTE initiative to "promote[ ] public awareness of the need for educating citizens about politics . . . and encourage[ ] greater participation in the political process." *Id*. This "initiative is primarily aimed at the activation, engagement, and mobilization of historically disengaged voters of color through strategic social media outreach, campus and faith-based

---

[1] Throughout this order, the court reproduces the marks as they appear in the respective parties' materials.

1

1  outreach, demonstrations, and intense get-out-the-vote mobilization efforts." *Id*. Defendants' Be
2  Woke. Vote initiative "aim[s] to encourage participation and inspiration of younger generations
3  that are oftentimes disenfranchised . . . and to create discussions about politics through social
4  media initiatives and in-person events." *Id*. ¶ 26. Each initiative uses a mark featuring its
5  respective name: WOKE VOTE and Be Woke. Vote.

6  Since August 2017, Think Rubix has used the WOKE VOTE mark as a wordmark and
7  feature in logos and designs. *Id*. ¶ 19. Think Rubix uses the mark "in association with its
8  political and civic engagement services." *Id*. In 2018, Think Rubix applied for a federal
9  trademark "for a stylized mark incorporating the phrase WOKE VOTE," which the U.S. Patent
10 and Trademark Office approved in June 2019. *Id*. ¶ 20. The trademark, U.S. Federal Registration
11 No. 5,767,245, comprises the word "'WOKE' in yellow above the word 'VOTE' in white, all
12 within a circular design in black and yellow." *Id*. ¶¶ 20–21. "Within the letter 'O' in 'WOKE'
13 appears a black and yellow background with several raised fists in black with yellow outlining,
14 and the wording 'WOKE VOTE' in white." *Id*. ¶ 21. Think Rubix uses the mark to "market[ ]
15 and display[ ] its services," *id*. ¶ 22, and "on apparel and other items," *id*. ¶ 24. Think Rubix and
16 its "WOKE VOTE initiative have been featured in numerous new[s] stories, printed publications,
17 and online features, and the WOKE VOTE initiative has even been featured in [a] documentary
18 film." *Id*. ¶ 23.

19 Since launching the Be Woke. Vote initiative in September 2018, defendants have used a
20 Be Woke. Vote logo on a website by the same name, on various social media platforms, and at in-
21 person events. *Id*. ¶¶ 26–27. The Be Woke. Vote designs primarily use "the colors black, white,
22 and yellow." *Id*. ¶ 39. Defendants display the "mark in connection with the initiative and its
23 products and services." *Id*. ¶ 27. Defendants use the marks on apparel, *id*. ¶ 41, and to "solicit
24 donations from individuals and organizations who desire to promote political engagement," *id*.
25 ¶ 44.

26 Plaintiff originally filed suit in the Eastern District of Arkansas. *See generally id*. That
27 court, lacking personal jurisdiction, transferred the matter to this court. Transfer Order at 1, ECF
28 No. 11. Plaintiff brings claims for 1) trademark infringement under the Lanham Act, 15 U.S.C.

1  § 1114; 2) trademark dilution under 15 U.S.C. § 1125(c); 3) unfair competition under 15 U.S.C.
2  § 1125(a); 4) common law trademark infringement; and 5) common law unfair competition. *See*
3  *generally* Compl.

4  Defendants now move for judgment on the pleadings. Mot., ECF No. 58. The motion is
5  fully briefed. Opp'n, ECF No. 61; Reply, ECF No. 66. The court held a hearing on the motion at
6  which plaintiff's counsel, Antwan Phillips and Daniel Roth, and defendants' counsel Vincent Cox
7  appeared. The court submitted the motion following hearing.

8  **II.   LEGAL STANDARD**

9  Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are
10 closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The "same standard of
11 review applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion," at a different stage
12 of the litigation. *Howell v. Leprino Foods Co.*, No. 18-1404, 2020 WL 704778, at *1 (E.D. Cal.
13 Feb. 12, 2020) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).
14 The court draws reasonable inferences in the non-moving party's favor and accepts the
15 complaint's allegations as true. *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019). Courts
16 may grant a Rule 12(c) motion with or without leave to amend. *See Gregg v. Dep't of Pub.*
17 *Safety*, 870 F.3d 883, 889 (9th Cir. 2017) (while Rule 15 provides for granting leave to amend
18 freely when justice requires, leave may be denied where futile).

19 **III.  ANALYSIS**

20   **A.   Federal Trademark Infringement and Unfair Competition**

21 Defendants first seek judgment on the pleadings for claim one, trademark infringement
22 under the Lanham Act, 15 U.S.C. § 1114, and claim three, unfair competition under 15 U.S.C.
23 § 1125(a). Defendants argue these claims fail as a matter of law because the Be Woke. Vote
24 mark is political speech protected by the First Amendment. Think Rubix argues the defendant's
25 argument is "premised on a misunderstanding of the interplay between the First Amendment and
26 [trademark law.]" Opp'n at 9. The court analyzes the application of the First Amendment to both
27 of these Lanham Act claims. "The Lanham Act prohibits conduct that would confuse consumers
28 as to the origin, sponsorship, or approval of goods or services." *OTR Wheel Eng'g, Inc. v. W.*

3

1 *Worldwide Servs., Inc.*, 897 F.3d 1008, 1013 (9th Cir. 2018) (citations omitted). "The Act allows
2 the producers of goods and services to enforce trademark rights." *Id.* (citing 15 U.S.C. §§ 1114,
3 1125(a); *see also Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209–10 (2000)). A
4 trademark is "any word, name, [or] symbol, . . . [used or intended to be used] to identify and
5 distinguish [goods] from those manufactured or sold by others and to indicate the source of the
6 goods." *Id.* (quoting 15 U.S.C. § 1127). To succeed on a claim for trademark infringement under
7 15 U.S.C. § 1114(1), a plaintiff ultimately must show (1) the presence of a valid and protectable
8 trademark, and (2) that defendant's use of the mark "is likely to cause consumer confusion."
9 *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Where,
10 as here, a plaintiff's [ ] unfair competition claim is based on alleged infringement of a registered
11 mark, the legal analysis under the two sections is essentially identical." *Lodestar Anstalt v.*
12 *Bacardi & Co. Ltd.*, 31 F.4th 1228, 1245 (9th Cir. 2022). The Lanham Act's protection is limited
13 to cases "where a defendant is trying to profit from a plaintiff's trademark"; this practice "is
14 consistent with the Supreme Court's view that '[a trademark's] function is simply to designate the
15 goods as the product of a particular trader and to protect his [goodwill] against the sale of
16 another's product as his.'" *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005)
17 (quoting *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)). "The Supreme
18 Court has made it clear that trademark infringement law prevents only unauthorized uses of a
19 trademark in connection with a commercial transaction . . . ." *Id.* at 676. At the same time, "the
20 Lanham Act does not require any actual sale of goods and services"; rather its elements can be
21 met if defendant "offers competing services to the public." *Id.* at 679 (citing *United We Stand*
22 *America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86, 90 (2d Cir. 1997)).

23       Here, the pleadings, construed in favor of Think Rubix as required, offer plausible
24 allegations that defendants used their mark "in connection with a sale of goods or services." *Id.*
25 at 677. Specifically, the complaint contains allegations that defendants use their mark not only on
26 apparel but also to promote their political engagement efforts, which are similar to those of Think
27 Rubix. Compl. ¶¶ 41–44, 47, 58; *United We Stand Am., Inc*, 128 F.3d at 89 (finding Lanham Act
28 applies to political activities as "services"). However, defendants dispute whether their speech

can properly be characterized as "purely commercial," to allow plaintiff's allegations to stick. Mot. at 9 (quoting *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 906 (9th Cir. 2002)).

"If speech is not "purely commercial"—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection. *Mattel*, 296 F.3d at 906 (quoting *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1185–86 (9th Cir. 2001)). "Although the boundary between commercial and noncommercial speech has yet to be clearly delineated, the 'core notion of commercial speech' is that it 'does no more than propose a commercial transaction.'" *Hoffman*, 255 F.3d at 1184 (citation omitted).

The Supreme Court has long held that when a communication, such as a "charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it [is] not [ ] dealt with . . . as a variety of purely commercial speech." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). Moreover, when speech is "characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political or social issues," *id.* at 632, "it must be treated as a fully protected activity under the First Amendment," *Gaudiya Vaishnava Soc. v. City & Cty. of San Francisco*, 952 F.2d 1059, 1063–64 (9th Cir. 1990), *as amended on denial of reh'g* (Dec. 26, 1991). Here, on the face of the complaint, defendants' use of Be Woke. Vote is inherently intertwined with their efforts to inform and persuade the public on social and political issues. *See* Compl. ¶¶ 27 ("Defendants' website and social media pages have prominently displayed the BE WOKE. VOTE mark in connection with the initiative and its products and services"), 44 ("Defendants use the Be Woke Vote Marks to solicit donations from individuals and organizations who desire to promote political engagement"). Therefore, claims one and three fail as a matter of law.

This conclusion is not altered by defendants' sale of merchandise with the Be Woke. Vote mark displayed on it. In *Gaudiya Vaishnava Society*, the Ninth Circuit reviewed a challenge to a city ordinance purporting to restrict only commercial speech. *See* 952 F.2d at 1063. Five nonprofit organizations challenged San Francisco's ordinance "which regulate[d] the sale of

5

1  merchandise on public sidewalks by nonprofit groups[.]" *Id.* at 1060.  In its discussion of

2  categories of speech, the court rejected the argument that "sale of merchandise is nothing more

3  than a commercial transaction and therefore is afforded no constitutional protection." *Id*.  It

4  continued, finding that "an expressive item does not lose its constitutional protections because it

5  is sold rather than given away." (citations omitted).[2]  Here, while plaintiff has a valid trademark

6  covering the services in which the parties are engaged, the fundamentally noncommercial nature

7  of the services places the defendants' actions within the exception to the Lanham Act.  Even if

8  there is a risk of public confusion regarding the two marks, the defendants' speech is nonetheless

9  protected.

10      "Courts may decline to grant leave to amend only if there is strong evidence of 'undue

11  delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

12  by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

13  of the amendment, [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v.*

14  *Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182

15  (1962)).  The court should permit amendment "unless it determines that the pleading could not

16  possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

17  2000); *Koshy v. Barbarosh*, 788 F. App'x 536, 538 (9th Cir. 2019).  The court grants judgment on

18  the pleadings for plaintiff's claims for trademark infringement and unfair competition under the

19  Lanham Act. The court declines to grant any leave to amend, as amendment appears futile.

20      **B.    Federal Trademark Dilution**

21  Next, the defendants argue that plaintiff's claim two for trademark dilution under

22  15 U.S.C. § 1125(c) fails on the pleading.  "Dilution" refers to the 'whittling away of the value of

23  a trademark' when it's used to identify different products." *Mattel, Inc.*, 296 F.3d at 903.  To be

24  successful on a dilution claim, a plaintiff must ultimately prove (1) "the mark is famous and

25  distinctive;" (2) "the defendant is making use of the mark in commerce;" (3) "the defendant's use

---

[2] The parties briefing also includes arguments related to *Rogers v. Grimaldi* but the court finds this case inapplicable here as *Rogers* addresses whether the Lanham Act applies to speech that includes artistic expression.  875 F.2d 994, 997 (2d Cir. 1989).

6

began after the mark became famous;" and (4) "the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(1)).  Where speech and use of a trademark is "not purely commercial . . . [the use of the mark is not] actionable as trademark dilution." *Stewart Surfboards, Inc v. Disney Book Grp., LLC*, No. 10-2982, 2011 WL 12877019, at *8 (C.D. Cal. May 11, 2011); *Mattel, Inc.*, 296 F.3d at 907.  As the defendants' use of the Be Woke. Vote mark is not purely commercial, the court grants judgment on the pleadings for this claim, also without leave to amend.

### C. State Common Law Infringement and Unfair Competition

Lastly, the defendants argue plaintiff's claims four and five for common law trademark infringement and common law unfair competition must fail as a matter of law.  The parties agree these common law claims are tethered to their federal counterparts, such that their fate is the same.  Mot. at 19; Opp'n at 16.  And they are correct: "[S]tate common law claims of unfair competition are 'substantially congruent' to claims made under the Lanham Act, and thus share the same analysis." *ThermoLife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706, 709 (9th Cir. 2021) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)).  Accordingly, the court also grants judgment on the pleadings for these claims, without leave to amend.

### IV. CONCLUSION

The defendants' motion for judgment on the pleadings (ECF No. 58) is **granted, without leave to amend**.

The Clerk of Court is directed to CLOSE this case.

The order resolves ECF No. 58.

IT IS SO ORDERED.

DATED: May 31, 2022.

CHIEF UNITED STATES DISTRICT JUDGE